# EXHIBIT 2

WALTER SIGNORELLI, ESQ.
2020 Maple Hill Street
PO Box 1255
Yorktown Heights, New York 10598

February 12, 2018

The Cochran Firm
55 Broadway, 23rd floor
New York, NY 10006

Re: Timothy White v. Esposito Realty, et al., U.S. District Court, SDNY, No. 17-CV-02404

1. Regarding the above matter, I have prepared this report, which constitutes my opinion within a reasonable degree of professional certainty of the actions and procedures employed by members of the New York City Police Department (NYPD) in connection with arrest and detention of the plaintiff Timothy White. My opinion is based on the documents provided and my experience, training, education, and professional background, which are described below. I reserve the right to revise this opinion upon the receipt of additional information.

2. I am a retired member of the NYPD, having served for more than (31) thirty-one years. During my tenure, I held the ranks of Police Officer, Sergeant, Lieutenant, Captain, Deputy Inspector, and Inspector, and served in numerous capacities, including patrol officer, patrol sergeant, anti-crime sergeant, lieutenant tour commander, Executive Captain of the 46th Precinct, Bronx; Commanding Officer, Manhattan North Public Morals Division; Commanding Officer of the 79th Precinct in Bedford-Stuyvesant, Brooklyn; Commanding Officer, Staff Services Section of the Personnel Bureau; Commanding Officer, 24th Precinct., Upper Manhattan; Executive Officer, Bronx Narcotics Division; Commanding Officer, License Division; Executive Officer, Narcotics Division; Executive Officer, Manhattan North Narcotics Initiative; and Executive Officer, Brooklyn South Detective Division.

3. During my tenure, I conducted, supervised, and reviewed thousands of arrests and investigations. All of the positions noted above entailed training and supervision responsibilities regarding response to crime complaints, investigations, and arrests.

4. Since my retirement from NYPD, I have taught police science and criminal law courses at John Jay College of Criminal Justice, New York, NY, and St. John's University, New York, NY, including courses in police administration, criminal investigation, constitutional law,

1

and criminal law. I have been retained as a consultant by both plaintiffs and defense in a number of police liability cases, and have testified as a police procedures expert in both State and Federal courts.

## MATERIALS REVIEWED

5. The following is a list of materials pertaining to the incident and individuals involved that I have reviewed thus far:

   a. Plaintiff's Summons;
   b. Verified Bill of Particulars;
   c. Defendant's Initial Disclosure;
   d. Defendant's First Supplemental Disclosure;
   e. Deposition transcript of Timothy White;
   f. New York County Criminal Court transcript of proceedings 7/13/17, Docket #2016NY029960, with testimony of Officers Keith Kealy, Frank Napolitano, and Mr. John Esposito;
   g. Photographs of premises;
   h. Photographs of cards;
   i. NYPD documents and affidavits.

## SUMMARY OF FACTS

6. On May 10, 2016, at about 11:30 a.m., in the vicinity of 358 West 38th Street, New York, N.Y., NYPD Police Officers Keith Kealy, Frank Napolitano, and Sergeant Anthony Mahepath, assigned to the Midtown South Precinct, arrested the plaintiff Timothy White. Mr. White was charged with Burglary 3rd, Criminal Trespass, and Criminal Possession of Burglar's Tools.

7. According to Mr. White, on the day he was arrested, he was employed by Imtech Graphics. In accordance with company practice, he called his supervisor who told him to wait at Ninth Avenue and West 38th Street to be picked up by a company driver. While waiting for the driver, he called his supervisor again. Because of street and traffic noise, he could not hear well on the phone, so he entered the lobby of 358 West 38th Street, a residential building. He entered the building when John Esposito, the manager of the building, exited the building and the front door was open. (37:2-11; 81:1-2). Inside of the building, he was confronted by Mr. Esposito, who questioned him if he knew anyone in the building. (37:23-24). White immediately left the building. (85:13-14). Outside, Mr. Esposito took a photo of him and called 911. (88:8-12). White walked across the street and turned onto Ninth Avenue.

2

8. Shortly thereafter, on Ninth Avenue, three uniformed police officers stopped him and told him to turn around. (42:16-19). The officers patted him down and handcuffed him. Then plainclothes officers arrived in an unmarked police car and questioned him. Mr. Esposito was present and talked with the officers (124:10-22). The plainclothes officers transported White to Midtown South Precinct and then to Central Booking.

9. Officer Napolitano testified at the criminal court trial that he and Sergeant Mahepath responded to the burglary call. At Ninth Avenue and West 39th Street, they observed Mr. Esposito who pointed at White and stated, "That's the guy right there." (59:4-5). Officer Napolitano testified, "Then we stopped the defendant. We immediately put him in handcuffs, and that's when Officer Kealy and another officer showed up." (59:6-8).

10. Officer Kealy, performing anticrime duties in plainclothes, responded and arrested Mr. White. According to Officer Kealy, he spoke with Esposito who allegedly told him that White "was trying to break into the second floor apartment in his apartment building." (26:4-6). Also, "he saw the defendant trying to force his way into the second floor apartment." (29:8-9.)

11. In the police car on route to the police station, Officer Kealy heard White say, "I can't believe this. I just started a job. I'm going to lose my job. I just went in to make a phone call. I couldn't hear outside."

12. At the police station, Officer Kealy searched White's wallet and found White's identification and two credit cards. According to Officer Kealy, "All the cards were chipped around the edges and cracked," and this indicated, "That they had been used to open up doors in the past." (32:15-23).

13. He prepared the arrest report for White, and he submitted an affidavit on 5/10/16, charging him with:
    (a.) Burglary 3rd,
    (b.) Possession of Burglar's Tools

14. The District Attorney's Officer did not go forward with the burglary charge but proceeded with the following charges:
    (a.) Attempted Criminal Trespass 2nd,
    (b.) Attempted Possession of Burglar's Tools;
    (b.) Criminal Trespass 3rd,
    (c.) Trespassing, a violation.

15. On July 13, 2017, White was tried on the charges in New York County Criminal Court before the Hon. Kathryn Paek. At the trial, Mr. Esposito testified on direct examination, "As I was leaving my apartment. I was just standing on the landing on my floor, on the third floor. I could look down to the second floor, and I noticed a male individual jiggling the door on

3

the second floor." (96:17-20). However, he also testified on direct that he could not actually see White's hands on the doorknob. (105:9-11). During cross-examination, Esposito could not recall whether he told the police officers that he saw White physically touch the door. (119:4-6).

16. At the trial, a stipulation was agreed upon that ADA Phillips had interviewed Esposito prior to his grand jury appearance and, "At that meeting the complaining witness stated that he never saw the defendant touch the door, and never observed any conduct to enter through the door or attempt to enter through the door." (129:12-15).

17. Judge Paek found White NOT GUILTY of all the remaining charges.

## OPINION

18. In my opinion, it was a violation of the standards of proper police procedure and practices for the Officers to have arrested Mr. White under the circumstances of this case. Police officers are trained that to make a lawful arrest they must have probable cause, and they are trained that probable cause consists of facts and circumstances that would lead a reasonable person to conclude that the person to be arrested committed, was committing, or was going to commit a crime. The officers have not alleged facts that would meet that standard.

19. Although Officers Napolitano and Sergeant Mahepath had the authority to stop and question White on the basis on the information from Mr. Esposito, they did not establish the probable cause necessary to arrest and handcuff White. They failed to investigate whether a crime had been committed, and they turned the defendant over to Officer Kiely for the arrest process without sufficient grounds.

20. Officer Kiely failed to sufficiently investigate the matter and failed to properly ascertain what Esposito had observed. He prepared an affidavit alleging that Esposito told him that White attempted "to forcibly open an apartment door within the building." (Aff. 5/13/16). However, ADA Phillips reported that Esposito said that he ". . . never saw the defendant touch the door, and never observed any conduct to enter through the door or attempt to enter through the door." On the basis of that statement the District Attorney dropped the burglary charge.

21. Mr. Esposito testified at trial that he could not recall whether he told the police officers that he saw White physically touch the door. In my opinion, Officer Kiely should have investigated the matter further to clarify Esposito's statement. By doing so, he should have learned what ADA Phillips learned from Esposito, to wit: White never tried to enter through the apartment door. He should have learned what Esposito testified to at trial, to wit: He could not see White's hands on the doorknob.
By proceeding with the burglary charge, Officer Kiely violated proper police practices and procedures.

4

22. Furthermore, charging White with possession of burglar's tools because he possessed his own identification and credit cards, in my opinion, was a violation of proper police practices and procedures. The assumption that the cards were being used as burglar's tools was speculative and not based on articulable facts. The cards were valid, and there was no evidence that White intended to use them as burglars' tools. The cards were in his wallet, and Esposito did not say that he saw him holding the cards. During the trial, Judge Paek dismissed the burglars' tools charge.

23. Regarding the criminal trespass misdemeanor and the trespass violation charges: although White admitted that he entered the building to make a phone call because it was quieter, the front door was apparently open and no signs against trespassing were posted. Moreover, trespassing is a violation, and police officers can only make arrests for violations committed in their presence. The alleged trespass violation was not committed in the officers' presence.

## CONCLUSION

24. In my opinion, within a reasonable degree of professional certainty, for all of the above reasons stated, the defendants violated the standards of proper and accepted police practices and procedures when they arrested, restrained, and charged Mr. White under the circumstances of this incident. They failed to reasonably assess the facts and improperly proceeded with the unwarranted arrest and improperly attempted to press the unwarranted charges.

/S/
Walter Signorelli

5