UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TIMOTHY WHITE,

Plaintiff,

-v-

CITY OF NEW YORK, et al.,

Defendants.

17-CV-2404 (JPO)

<u>OPINION AND ORDER</u>

J. PAUL OETKEN, District Judge:

Plaintiff Timothy White ("White") brought the instant action against the City of New York ("the City"), the New York City Police Department ("the NYPD"), Esposito Realty LLC ("Esposito Realty"), one John Doe building superintendent, and ten John Doe police officers (collectively, "Defendants"). Plaintiff White asserts claims for: (1) false arrest and false imprisonment under 42 U.S.C. § 1983 ("§ 1983") and New York law; (2) malicious prosecution under § 1983 and New York law; (3) use of excessive force under § 1983; (4) conspiracy to interfere with civil rights under 42 U.S.C. § 1985 ("§ 1985"); (5) failure to prevent civil rights violation under 42 U.S.C. § 1986 ("§ 1986"); (6) battery; (7) assault; (8) negligence; (9) negligent hiring, supervision, and retention; (10) intentional infliction of emotional distress; and (11) defamation.

Defendants now move for summary judgment on all of White's claims. For the reasons that follow, the Court grants Defendants' motion.

## I. Background

### A. Factual Background

The following facts are drawn from the complaint and the parties' Rule 56.1 statements and are not subject to genuine dispute unless otherwise noted.[1]

Defendant Esposito Realty owns a small residential apartment building which is located at 358 West 38th Street ("the Building") in New York City. (Dkt. No. 1-1 ("Compl.") ¶ 8; Dkt. No. 39 ¶ 38.) John Esposito ("Esposito"), a co-owner and co-managing agent of Esposito Realty, helps maintain the Building. (Dkt. No. 39 ¶¶ 35–36.) As a residential building, the Building's front door requires a key to enter and no one is permitted inside other than the tenants of the Building or their guests. (Dkt. No. 38 ¶¶ 7–8.) White does not live in the Building. (*See* Dkt. No. 39 ¶¶ 41–44.)

On May 10, 2016, at around 11:00 a.m., White entered the Building through its front door. (Dkt. No. 38 ¶ 11; Dkt. No. 39 ¶ 9.) Upon spotting White in the Building, Esposito approached him to ask whether he lived in the Building or knew any tenant there. (Dkt. No. 38 ¶ 14; Dkt. No. 39 ¶ 13.) Answering Esposito's questions in the negative, White exited the Building. (Dkt. No. 38 ¶ 15; Dkt. No. 39 ¶ 13.) As White walked out, Esposito called 911 to report a burglary. (Dkt. No. 38 ¶ 18.) Specifically, he told the 911 operator that a "black male . . . wearing a black hoodie . . . [was] trying to get into an apartment in the building." (Dkt. No. 38 ¶¶ 24–25 (first ellipsis in original).) In the meantime, White walked away from the Building and stood at the intersection of 38th Street and 9th Avenue. (Dkt. No. 39 ¶ 26.)

---

[1] The Court deems each statement of material facts in the Rule 56.1 statements of the City and Esposito Realty admitted unless it is "specifically controverted by a correspondingly numbered paragraph" that is "followed by citation to evidence which would be admissible" in White's Rule 56.1 statement. Local Civil Rule 56.1(c), (d).

About two minutes later, Police Officer Frank Napolitano ("Officer Napolitano") and Sergeant Anthony Mahepath ("Sergeant Mahepath") arrived at the Building in response to Esposito's burglary report.  (Dkt. No. 38 ¶¶ 30, 32, 36; Dkt. No. 39 ¶ 26.)  As soon as the police officers arrived, Esposito identified White as the burglar (Dkt. No. 38 ¶ 37), and the police officers stopped White (Dkt. No. 38 ¶¶ 40–41).  Shortly after White was initially detained, Police Officer Kealy ("Officer Kealy") arrived at the scene.  (Dkt. No. 38 ¶ 43.)

The police officers then spoke to Esposito about the alleged burglary, and Esposito stated that White "was jiggling at the lock on the door of Apartment 2E inside [the Building]."  (Dkt. No. 38 ¶ 50.)  Esposito also showed the police officers photographs of White outside the Building.  (Dkt. No. 38 ¶ 56.)  The police officers also asked White about this incident, and White stated that he "was never in the building."  (Dkt. No. 38 ¶ 63.)  Thereafter, the officers arrested White and transferred him to the Midtown South Precinct.  (Dkt. No. 38 ¶¶ 64–65.)

Upon arrival at the precinct, the police officers searched White and found several cards that were worn, chipped, and cracked on the edges, which appeared to Officer Kealy to have been used as tools to open door locks.  (Dkt. No. 38 ¶¶ 71–74.)  At the precinct, the police officers interviewed Esposito once again, and Esposito stated that "he observed [White] inside of [the Building], jiggling the lock on an apartment on the second floor."  (Dkt. No. 38 ¶ 77.)  Esposito also confirmed the accuracy of the police report memorializing his statement.  (Dkt. No. 38 ¶¶ 80–82.)

A detective then interviewed White.  (Dkt. No. 38 ¶ 83.)  After being read his *Miranda* rights, White voluntarily admitted that he was in the building but was only there to make a phone call.  (*See* Dkt. No. 38 ¶¶ 84–87.)

White was later charged with burglary and possession of burglary tools (Dkt. No. 38 ¶ 91), but his charges were eventually reduced (Dkt. No. 38 ¶ 97) and White was subsequently acquitted at a bench trial (Dkt. No. 38 ¶ 103).

**B.  Procedural Background**

White filed the instant lawsuit in New York County Supreme Court on February 15, 2017, alleging several claims relating to his arrest on May 10, 2016.  (Dkt. No. 1-1.)  The City filed its answer on March 3, 2017, asserting cross-claims against Esposito Realty.  (Dkt. No. 28-4.)  Esposito Realty then removed the instant lawsuit to this Court under 28 U.S.C. § 1441 and § 1446.  (Dkt. No. 1.)  Esposito Realty answered the complaint on May 5, 2017.  (Dkt. No. 10.)

After the close of discovery, the City and Esposito both moved for summary judgment on all of White's claims.  (Dkt. Nos. 25, 29.)  White filed an opposition to both motions.  (Dkt. No. 36.)  The City and Esposito Realty replied.  (Dkt. Nos. 52, 56.)

Separately, the City asked that Esposito Realty remain a party in this case in light of the City's cross-claims, in the event that Esposito Realty's motion for summary judgment is granted but the City's motion is not granted in its entirety.  (Dkt. No. 35.)  Esposito Realty also requested the Court to keep the City in this case, in the event that City's motion is granted but not Esposito Realty's motion.  (Dkt. No. 57.)  After rounds of back and forth (Dkt. Nos. 41, 50, 57, 58), the briefing is complete and the motions for summary judgment are now ripe for resolution.

**II.  Legal Standard**

Summary judgment under Rule 56 is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine if, considering

the record as a whole, a rational jury could find in favor of the non-moving party. *See Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).

"On summary judgment, the party bearing the burden of proof at trial must provide evidence on each element of its claim or defense." *Cohen Lans LLP v. Naseman*, No. 14 Civ. 4045, 2017 WL 477775, at *3 (S.D.N.Y. Feb. 3, 2017) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). "If the party with the burden of proof makes the requisite initial showing, the burden shifts to the opposing party to identify specific facts demonstrating a genuine issue for trial, *i.e.*, that reasonable jurors could differ about the evidence." *Clopay Plastic Prods. Co. v. Excelsior Packaging Grp., Inc.*, No. 12 Civ. 5262, 2014 WL 4652548, at *3 (S.D.N.Y. Sept. 18, 2014). The court views all "evidence in the light most favorable to the non-moving party," and summary judgment may be granted only if "no reasonable trier of fact could find in favor of the nonmoving party." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (second quoting *Lunds, Inc. v. Chem. Bank*, 870 F.2d 840, 844 (2d Cir. 1989)).

## III. Discussion

White's complaint asserts five claims under federal law: (1) false arrest under § 1983, (2) malicious prosecution under § 1983, (3) use of excessive force under § 1983, (4) conspiracy to interfere with civil rights under § 1985, and (5) failure to prevent civil rights violation under § 1986. The rest of his claims arise under New York law. The Court will discuss White's federal claims first and then turn to his state law claims.

### A. Parties to the Action

As a threshold matter, summary judgment must be granted in favor of Defendants with respect to all claims against the NYPD. Courts look to state law to decide whether an agency of a municipality may be sued. Fed. R. Civ. P. 17(b)(3). It is well established that "the NYPD is a non-suable agency of the City." *Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir.

2007); *see* N.Y.C. Charter § 396 ("All actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law."). Accordingly, summary judgment must be granted for the NYPD.

In addition, the charges against ten unnamed John Doe police officers and one unnamed John Doe building superintendent shall be dismissed without prejudice. This lawsuit was initiated on February 15, 2017. (Dkt. No. 1-1.) The fact discovery period closed on February 9, 2018, and depositions were completed on January 19, 2018. (Dkt. No. 22.) In light of White's failure to identify and serve the Doe Defendants despite sufficient time throughout discovery, "it is appropriate to dismiss those Defendants as parties to this case." *Mesa v. City of New York*, No. 09 Civ. 10464, 2013 WL 31002, at *8 (S.D.N.Y. Jan. 3, 2013). Therefore, the Court evaluates only White's claims against the City and Esposito Realty.

## B. Federal Law Claims

### 1. Liability of the City

White claims that the City is liable for the alleged violations of his rights by the police officers under §§ 1983, 1985, and 1986.[2] (Compl. ¶ 1.)

---

[2] White seeks attorney's fees under § 1988, which are available only if he prevails on his § 1983 claims. *Lilly v. Cty. of Orange*, 910 F. Supp. 945, 949 (S.D.N.Y. 1996) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983)). Because the Court concludes that White does not have any valid § 1983 claims in this case, his attorney's fees claim under § 1988 is dismissed accordingly.

Although the City appears to assume that White is also pursuing a claim against Defendants under 42 U.S.C. § 1981 (Dkt. No. 27 at 19), White does not explicitly plead a claim under § 1981 in his complaint. At any rate, to the extent the Complaint could be read to allege a § 1981 claim, it fails for the same reasons as his § 1983 claim, and because White has not adduced any evidence to support the allegation of "racial profiling." (Compl. ¶ 118.)

To start with, it is well settled that "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 691 (1978). Instead, to pursue federal law claims against a municipality, a plaintiff must establish that the alleged violation is caused by a municipality's affirmative conduct such as its policy or custom. *Id.* at 690–91. Nonetheless, a municipality can be held liable for its failure to act that "is the functional equivalent of a decision by the city itself to violate the Constitution." *Connick v. Thompson*, 563 U.S. 51, 61–62 (2011) (quoting *City of Canton v. Harris*, 489 U.S. 378, 395 (1989) (O'Connor, J., concurring in part and dissenting in part)). For example, a municipality's "persistent failure to [train or supervise] subordinates who violate civil rights could" give rise to *Monell* liability if the severity of such failure rises to the level of "'deliberate indifference' to a plaintiff's rights." *Sarus v. Rotundo*, 831 F.2d 397, 401 (2d Cir. 1987) (citations omitted).

Courts apply the same standard of liability under § 1983 in § 1985 cases, and therefore a municipality is not liable for the misconduct of its police officers under § 1985 under a *respondeat superior* theory. *See Zherka v. City of New York*, 459 F. App'x 10, 12 (2d Cir. 2012) (citing *Owens v. Haas*, 601 F.2d 1242, 1247 (2d Cir. 1979)). A plaintiff must "demonstrate that a municipal custom or policy was a motivating force behind the alleged constitutional deprivations." *Thomas v. Roach*, 165 F.3d 137, 147 (2d Cir. 1999).

Finally, "a § 1986 claim must be predicated upon a valid § 1985 claim," because § 1986 "provides a cause of action against anyone who having knowledge that any of the wrongs conspired to be done and mentioned in section 1985 are about to be committed and having power to prevent or aid, neglects to do so." *Id.* (second quoting *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1088 (2d Cir. 1993)) (internal quotation marks omitted).

White argues that the City "failed to adequately train and supervise its police officers due to its deliberate indifference to the violation of Plaintiff's rights." (Dkt. No. 36 at 16.) In support of his claim, White points to the arrest at issue here and alleges that the police officers had no "probable cause" to arrest him, and conclusorily states that he "has presented evidence of a municipal policy or custom." (*Id.*)

White's showing is insufficient to establish inadequate training or supervision on the part of the City. First, with respect to his failure to train claim, White is required to "identify a specific deficiency in the city's training program and establish that that deficiency is 'closely related to the ultimate injury,' such that it 'actually caused' the constitutional deprivation." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 129 (2d Cir 2004) (quoting *City of Canton*, 489 U.S. at 391).

Here, White has proffered no evidence of a deficiency in the City's training program or advanced any theory as to how a faulty training program caused the police officers to commit the alleged constitutional violations in this case. The report from Inspector Walter Signorelli (the "Signorelli Report") on which White relies is similarly devoid of any particular facts regarding a deficiency in the City's training program. (*See generally* Dkt. No. 37-2.)

All that White relies on is a single incident in which the police officers allegedly failed to follow proper procedures in arresting him. (Dkt. No. 36 at 16.) But an allegation of a single instance of police misconduct is insufficient to raise the inference that the police had been improperly trained. *See Dwares v. City of New York*, 985 F.2d 94, 100–01 (2d Cir. 1993). Without any evidence as to how the City trained its officers and what deficiencies its training program might have, no reasonable factfinder could conclude that White has established a failure by the City to properly train its police officers.

White's claim for failure to supervise also fails. A municipality could be liable under *Monell* if it "exhibited deliberate indifference" to possible constitutional violations by its police officers, after it had been notified of them. *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995). To establish the City's deliberate indifference, White "must show that the need for more or better supervision to protect against constitutional violations was obvious," but the City made "no meaningful attempt . . . to investigate or to forestall further incidents" after "repeated complaints of civil rights violations." *Id.*

Here, White fails to adduce any evidence from which a reasonable factfinder could infer that the necessity for more supervision was obvious but the City failed to act. Putting aside the propriety of his arrest, the May 10, 2016 arrest is the only incident that White relies upon to support a failure to supervise claim. However, "[a]s a matter of law, one incident of unconstitutional conduct by a city employee cannot be a basis for finding an agency-wide custom." *Davis v. City of New York*, 228 F. Supp. 2d 327, 346 n.35 (S.D.N.Y. 2002). Therefore the allegation that the City failed to adequately supervise the police officers as to the isolated incident of White's arrest is insufficient to establish the City's "persistent failure to discipline" its police officers. *Sarus*, 831 F.2d at 401; *see also City of Okla. City v. Tuttle*, 471 U.S. 808, 823–24 (1985) (holding a single incident involving employee below the policymaking level generally will not suffice to support inference of a municipal custom or policy). Furthermore, there is no evidence in the record showing that the City was on notice of the alleged violations from "repeated complaints," but failed to investigate. *Vann*, 72 F.3d at 1049; *see Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991). White's failure to supervise claim therefore fails.

To sum up, White fails to establish any municipal policy or custom because he has not adduced evidence that the City's training or supervision of its police officers was inadequate. Given that White's § 1983 and § 1985 claims both require a showing of a municipal policy or custom, his claims under § 1983 and § 1985 must be dismissed. Consequently, his § 1986 claim, which must be predicated upon a valid § 1985 claim, is also dismissed.

### 2. Liability of Esposito Realty

White asserts the same federal law claims against Esposito Realty. (Compl. ¶ 1.)

Section 1983 was enacted to "prohibit[] interference with federal rights *under color of state law*." *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982) (emphasis added). Therefore, "[t]he ultimate issue in determining whether a person is subject to suit under § 1983 is . . . whether [Esposito Realty]'s action . . . can fairly be seen as state action." *Id.*

Here, it is not disputed that Esposito Realty is a private entity. (Compl. ¶¶ 4–7.) White nonetheless contends that Esposito Realty cooperated with the police officers in depriving him of his federally protected rights by calling the police and providing allegedly false information. (Dkt. No. 36 at 20.) White is correct that a private party can be liable as a state actor under § 1983 if the private party "is a willful participant in joint activity with the State or its agents." *United States v. Price*, 383 U.S. 787, 794 (1966). But it has long been held that a private party does not become a willful participant "by merely invoking the assistance of the police." *Betts v. Shearman*, No. 12 Civ. 3195, 2013 WL 311124, at *14 (S.D.N.Y. Jan. 24, 2013) (collecting cases). Therefore, Esposito Realty's summoning of the police and provision of information— even if such information is allegedly false—does not render it a willful participant in joint activity with the police. *See Young v. Suffolk Cty.*, 705 F. Supp. 2d 183, 196 (E.D.N.Y. 2010) (citing *Ginsberg v. Healey Car & Truck Leasing, Inc.*, 189 F.3d 268, 272 (2d Cir. 1999)). Accordingly, Esposito Realty is not a state actor subject to liability under § 1983.

White's reliance on *Bang v. Utopia Restaurant* is not to the contrary. (Dkt. No. 36 at 20.) The court in *Bang* inferred an alleged joint activity between a restaurant owner who called the police and the police from the fact that they had a 20-minute conversation before arresting the plaintiffs. *Bang v. Utopia Rest.*, 923 F. Supp. 46, 50 (S.D.N.Y. 1996). But in so holding, the *Bang* court noted, "[i]f the officers arrested plaintiffs for offenses committed before the officers' arrival at [the restaurant], in reasonable reliance on statements by the restaurant owners, it would be difficult to infer joint action[.]" *Id.* That is what happened in the instant case. The police officers arrived at the Building and promptly arrested White based on Esposito's witness account. (Dkt. No. 39 ¶ 26; Dkt. No. 38 ¶¶ 48–64.) That fact from the record requires the Court to conclude that Esposito Realty did not act jointly with the police. Therefore, White's § 1983 claims against Esposito Realty must be dismissed.

In addition, White also alleges that Esposito Realty conspired with the City to violate his constitutional rights under § 1985. To establish a § 1985 conspiracy claim, a plaintiff must demonstrate the following elements:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States.

*Mian*, 7 F.3d 1087–88 (citing *United Bhd. of Carpenters, Local 610 v. Scott*, 463 U.S. 825, 828–29 (1983)). Furthermore, the conspiracy must be motivated by racial or class-based discriminatory animus. *Id.* at 1088.

Here, White's allegation of a conspiracy is wholly conclusory. (*See, e.g.*, Compl. ¶ 114.) In addition, his opposition brief fails to meaningfully respond to Esposito Realty's argument

regarding § 1985 liability.[3]  (*See generally* Dkt. No. 31 at 6–7; Dkt. No. 36 at 17–21.)  Considering the mere conclusory allegation of conspiracy by White, the undisputed fact that Esposito did not know any of the police officers prior to the arrest (Dkt. No. 39 ¶ 73), and the lack of any other evidence, the Court concludes that White has failed to make an adequate showing of a conspiracy claim under § 1985 against Esposito Realty.  Consequently, his § 1986 claim, which is predicated upon a valid § 1985 claim, must also be dismissed.

### C.      State Law Claims

Having concluded that White's federal law claims against the City and Esposito Realty do not survive summary judgment, the Court now turns to White's state law claims.[4]  White asserts the following nine claims under New York law:  (1) false arrest and false imprisonment, (2) malicious prosecution, (3) battery, (4) assault, (5) negligence, (6) negligent hiring, (7) infliction of emotional distress, (8) defamation, and (9) conspiracy.[5]  The Court addresses them in turn.

---

[3] White's attack on Esposito's credibility does not save his claim.  (Dkt. No. 36 at 18–19.)  Even assuming that there may be inconsistencies in Esposito's recollections, White has adduced no evidence to show that the police officers and Esposito Realty conspired to arrest him.

[4] "A district court has discretion as to whether it should exercise supplemental jurisdiction over state law claims when all federal claims have been dismissed."  *Barnes v. City of New York*, 338 F. Supp. 3d 317, 325 (S.D.N.Y. 2018) (citing *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 83 (2d Cir. 2018)).  Considering the fact that the parties have already completed discovery and have briefed both federal and state law issues, and that none of the parties has requested a remand to state court, the Court concludes that "principles of judicial economy, fairness, convenience and comity will be served best by" retaining jurisdiction over the remaining state law claims.  *Id.*

[5] The City appears to suggest that White is also pursuing an abuse of process claim against Defendants.  (Dkt. No. 27 at 14–15.)  The Court observes that White failed to explicitly plead an abuse of process claim in his complaint.  At any rate, to the extent the Complaint could be read to allege an abuse of process claim, it fails because White did not adduce any evidence to support the allegation of "abuse of process."  (Compl. ¶ 142.).

### 1.    False arrest and false imprisonment

#### a.  Liability of the City

White's first claim relates to the circumstances of his arrest.  In particular, he alleges that he was arrested and imprisoned by the police officers without probable cause, thereby violating his rights under New York law.  (Compl. ¶¶ 1, 32; Dkt. No. 36 at 9.)  In New York, a false arrest claim "is a species of false imprisonment" claim and has substantially the same elements.[6] *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995).  To succeed on a false arrest claim, a plaintiff must demonstrate that "(1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Jocks v. Tavernier*, 316 F.3d 128, 134–35 (2d Cir. 2003) (quoting *Broughton v. State*, 37 N.Y.2d 451, 456 (1975)).  In addition, "[t]he existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest." *Covington v. City of New York*, 171 F.3d 117, 122 (2d Cir. 1999) (alteration in original) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)).

"Probable cause 'is based upon whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest.'" *Sachs v. Cantwell*, No. 10 Civ. 1663, 2012 WL 3822220, at *11 (S.D.N.Y. Sept. 4, 2012) (quoting *Jaegly v. Couch*, 439 F.3d 149, 153 (2d Cir. 2006)).  "Probable cause exists when an officer has 'knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested.'" *Curley v. Vill. of Suffern*, 268 F.3d 65, 69–70 (2d Cir. 2001) (quoting *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000)).  It is

---

[6] The Court refers to the false arrest and false imprisonment allegations collectively as a false arrest claim because they have the substantially the same elements under New York law.

well established in this Circuit that a police officer "has probable cause to arrest if he has 'received his information from some person, normally the putative victim or eyewitness.'" *Sachs*, 2012 WL 3822220, at *11 (quoting *Martinez*, 202 F.3d at 634).

The City argues that the police officers had probable cause to arrest White on the basis of information from Esposito—a putative victim and eyewitness. (Dkt. No. 27 at 7.) Specifically, the City relies on the following undisputed facts to establish probable cause: First, Esposito called 911 to report an attempted burglary whereby a man was trying to break into an apartment on the second floor of a private residential building. (Dkt. No. 38 ¶¶ 22–25.) Second, Esposito further described that burglar as "a black male . . . wearing a black hoodie" with "gray sweatpants and black sneakers" in his 911 call. (Dkt. No. 38 ¶ 24.) Third, Officer Napolitano and Sergeant Mahepath arrived at the Building in response to Esposito's report and Esposito pointed out White, whose clothing fit the description of the alleged burglar. (Dkt. No. 38 ¶¶ 9, 32–37.) Fourth, the police officers interviewed Esposito, whose statements were consistent with his 911 burglary report. (Dkt. No. 38 ¶¶ 22, 46, 50, 53–55.) And finally, the police officers also spoke to White, and White stated that he "was never in the building." (Dkt. No. 38 ¶¶ 61, 63.)

Taken together, these facts are sufficient to establish beyond genuine dispute that the police officers had probable cause to arrest White. Under New York law, "[a] person is guilty of burglary in the second degree when he knowingly enters or remains unlawfully in a building with intent to commit a crime therein, and when . . . [t]he building is a dwelling." N.Y. Penal Law § 140.25. Here, the police officers, although they did not observe the alleged burglary firsthand, learned from Esposito—a witness and putative victim—that White allegedly entered the Building and attempted to forcibly break into a second-floor apartment. (Dkt. No. 38 ¶ 53.) In addition, Esposito positively identified White as the alleged burglar and shared pictures of

White standing outside the Building. (Dkt. No. 38 ¶¶ 37, 56.) Esposito's account when interviewed by the police officers was consistent with his initial 911 report, so there was no reason for the officers to doubt his veracity.

White contends that the police officers' reliance on Esposito's account was unjustified and that they should have conducted further investigation. (Dkt. No. 36 at 10.) The Court disagrees.

First, police officers are entitled to rely upon the account of an eyewitness, who is presumed to be reliable. *Martinez*, 202 F.3d at 634; *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) ("[A]n identified citizen informant is presumed to be reliable." (quoting *Caldarola v. Calabrese*, 298 F.3d 156, 165 (2d Cir.2002)). Accordingly, the police officers were justified in relying on Esposito's observations and account as the witness that reported the attempted burglary. White argues that Esposito "never saw [him] with any burglary tools," and so Esposito's account of an attempted burglary was unreliable. (Dkt. No. 36 at 10). But the ultimate determination is not whether Esposito's account was accurate *in hindsight*, but whether it was reasonable for the police officers to rely on Esposito's report to believe that there was probable cause *at the time of the arrest*. Even though Esposito did not tell the officers that he saw White with burglary tools, there was probable cause to arrest White because, at the time, there were no "circumstances rais[ing] doubt as to [Esposito]'s veracity." *Curley*, 268 F.3d at 70.

Second, the police officers did not have an obligation to further investigate the events at issue, even though White's statement that he was never in the Building contradicted Esposito's report. The function of police officers is to "apprehend those suspected of wrongdoing, and not to finally determine guilt through a weighing of the evidence." *Crowley*, 460 F.3d at 396

(quoting *Krause v. Bennett*, 887 F.2d 362, 372 (2d Cir. 1989)). Therefore, once an officer has probable cause to arrest a person suspected of wrongdoing, the officer is not required to investigate the exculpatory statements made by the arrestee, *id.* at 395–96, or to explore "every theoretically plausible claim of innocence before making [the] arrest," *Ricciuti*, 124 F.3d at 128.

Looking at the "totality of the circumstances," *Jenkins*, 478 F.3d at 90, it is beyond genuine dispute that the police officers had probable cause to arrest White, which constitutes a complete bar to his false arrest claim. Accordingly, the Court grants summary judgment to the City on White's false arrest and false imprisonment claims.

### b. Liability of Esposito Realty

As discussed above, a false arrest or false imprisonment claim under New York law requires White to establish at least that Esposito Realty intentionally confined him. But the record is clear that Esposito Realty—or its co-owner Esposito—never attempted to confine White. Indeed, White was free to exit the Building, cross the street, and walk toward Ninth Avenue without any interference from Esposito. (Dkt. No. 38 ¶¶ 15, 26, 27; Dkt. No. 39 ¶¶ 15–18.) White never addresses this point in his opposition. There being no genuine dispute on this claim, the Court grants summary judgment to Esposito Realty on White's false arrest and false imprisonment claims.

### 2. Malicious prosecution

### a. Liability of the City

White next asserts a malicious prosecution claim against the City. To succeed on a malicious prosecution claim under New York law, a plaintiff must show: "(1) that the defendant initiated a prosecution against the plaintiff, (2) that the defendant lacked probable cause to believe the proceeding could succeed, (3) that the defendant acted with malice, and (4) that the prosecution was terminated in the plaintiff's favor." *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d

16

208, 215 (2d Cir. 2000) (quoting *Posr v. Court Officer Shield # 207*, 180 F.3d 409, 417 (2d Cir. 1999)).  Probable cause is a complete defense to a malicious prosecution claim because it directly negates the second element of this claim, "unless plaintiff can demonstrate that at some point subsequent to arrest, additional facts came to light that negated probable cause." *Smith v. City of New York*, No. 04 Civ. 3286, 2010 WL 3397683, at *9 (S.D.N.Y. Aug. 27, 2010) (quoting *Dukes v. City of New York*, 879 F. Supp. 335, 342 (S.D.N.Y. 1995)).  In other words, probable cause dissipates when "the groundless nature of the charges [are] made apparent by the discovery of some intervening fact." *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996).

The City argues that there is no evidence of an intervening fact that rendered the probable cause supporting arrest to dissipate at the time of prosecution in this case.  To the contrary, the City claims that the initial probable cause was bolstered by the statements of White and Esposito after arrest.  (Dkt. No. 27 at 11.)  Specifically, the City alleges that Officer Kealy interviewed Esposito once again at the precinct after the arrest.  (*Id.*; Dkt. No. 38 ¶¶ 77–79.)  At the interview, Esposito gave an account of White's alleged burglary that was consistent with his 911 call and his statement at the arrest scene.  (Dkt. No. 27 at 11.)  Esposito also reviewed a summary of his account and verified its accuracy.  (*Id.*; Dkt. No. 38 ¶¶ 80–82.)  In contrast, White gave a contradictory statement regarding whether he actually entered the Building, from stating that he "was never in the [Building]" to that he "went in to [the Building] to make a phone call."  (Dkt. No. 27 at 11–12; Dkt. No. 38 ¶¶ 63, 69, 87.)  In addition, from an inventory search of White incident to his arrest, Officer Kealy recovered a number of cards that appeared to have been altered in a manner consistent with burglary tools.  (Dkt. No. 27 at 12.)

In response, White offers no evidence of dissipation. Instead, White argues that there was no probable cause to prosecute him because there was no probable cause to arrest him in the first place. (Dkt. No. 36 at 14.) But as discussed above, there was sufficient probable cause for the police officers to arrest White and subsequently prosecute him. Moreover, the additional evidence of White's inconsistent statements and the alleged burglary tools further strengthens the probable cause to prosecute him.

Accordingly, the Court concludes that White has not adduced any evidence for a reasonable factfinder to conclude that the probable cause supporting his arrest for burglary had dissipated. Therefore, White fails to establish a malicious prosecution claim against the City, and the City is entitled to summary judgment on this claim.

### b. Liability of Esposito Realty

As stated above, in order to maintain a malicious prosecution claim under New York law, a plaintiff must prove, among other things, that the defendant "initiated" a prosecution against the plaintiff. *Rohman*, 215 F.3d at 215. New York courts have established that "a civilian complainant, by merely seeking police assistance or furnishing information to law enforcement authorities who are then free to exercise their own judgment as to whether an arrest should be made and criminal charges filed, will not be held liable for . . . malicious prosecution." *Dikler v. City of New York*, No. 07 Civ. 5984, 2009 WL 1562846, at *2 (S.D.N.Y. May 26, 2009) (quoting *Du Chateau v. Metro-N. Commuter R.R. Co.*, 688 N.Y.S.2d 12, 15 (App. Div. 1st Dep't 1999)). Therefore, a plaintiff must demonstrate that the defendant "affirmatively induced the officer to act, such as . . . procuring [an arrest] to be made or showing active, officious and undue zeal, to the point where the officer is not acting of his own volition." *Mesiti v. Wegman*, 763 N.Y.S.2d 67, 69 (App. Div. 2d Dep't 2003) (citation omitted); *see also Maskantz v. Hayes*, 832 N.Y.S.2d

566, 569 (App. Div. 1st Dep't 2007) ("A malicious prosecution defendant must do more than merely report a crime to police and cooperate in its prosecution[.]").

Here, it is undisputed that Esposito Realty's involvement with the criminal charges was limited to Esposito's 911 call and his subsequent interviews with the police and an assistant district attorney. (Dkt. No. 38 ¶¶ 18, 46, 76–82, 94–95.) Esposito Realty argues that it is entitled to summary judgment because it took no active role in the authorities' discretionary decisionmaking in arresting or prosecuting White. (Dkt. No. 31 at 11.) White fails to point to any evidence in the record to show that Esposito Realty induced the subsequent criminal charges against White. Moreover, White never addresses this argument in his opposition. Accordingly, the Court grants summary judgment for Esposito Realty on White's malicious prosecution claim.

### 3. Assault and Battery

#### a. Liability of the City

White alleges that the handcuffing of him in the course of his arrest constitutes assault and battery under New York law. (Dkt. No. 36 at 15.)

Under New York law, "[a]n 'assault' is an intentional placing of another person in fear of imminent harmful or offensive contact. A 'battery' is an intentional wrongful physical contact with another person without consent." *United Nat'l Ins. Co. v. Waterfront N.Y. Realty Corp.*, 994 F.2d 105, 108 (2d Cir. 1993). But New York Penal Law § 35.30 permits an officer to "use physical force when and to the extent he or she reasonably believes such to be necessary to effect the arrest." N.Y. Penal Law § 35.30(1); *Lederman v. Adams*, 45 F. Supp. 2d 259, 268 (S.D.N.Y. 1999). Accordingly, courts have consistently applied the same standard to assault and battery claims against a law enforcement officer under New York law, and an excessive force claim under § 1983. *Posr v. Doherty*, 944 F.2d 91, 94–95 (2d Cir. 1991). In other words, "the test for whether a plaintiff can maintain [state law assault and battery] cause[s] of action against law

enforcement officials is the exact same test as the one used to analyze a Fourth Amendment

excessive force claim." *Phillips v. City of Middletown*, No. 17 Civ. 5307, 2018 WL 4572971, at

*10 (S.D.N.Y. Sept. 24, 2018) (alterations in original) (quoting *Kavazanjian v. Rice*, No. 03 Civ.

1923, 2008 WL 5340988, at *7 (E.D.N.Y. Dec. 22, 2008)).

In the context of handcuffing persons upon arrest, courts have recognized that "overly

tight handcuffing can constitute excessive force." *Lynch ex rel. Lynch v. City of Mount Vernon*,

567 F. Supp. 2d 459, 468 (S.D.N.Y. 2008). "[I]n evaluating the reasonableness of handcuffing, a

Court is to consider evidence that: 1) the handcuffs were unreasonably tight; 2) the defendants

ignored the [plaintiff s] [*sic*] pleas that the handcuffs were too tight; and 3) the degree of *injury*

*to the wrists*." *Id.* (alterations and emphasis in original) (quoting *Esmont v. City of New York*,

371 F. Supp. 2d 202, 215 (E.D.N.Y. 2005)).

Here, White has failed to present any evidence that he requested that his handcuffs be

loosened. Therefore, there is no evidence that any police officer ignored his complaint of pain.

*Esmont*, 371 F. Supp. 2d at 215 ("[R]esearch [does not] reveal[] any cases permitting a plaintiff

to establish an excessive force claim based on tight handcuffing in the absence of a request to

loosen them.") (collecting cases). Nor does White offer evidence that he suffered any injury

from the handcuffing. There is a consensus in this Circuit that "tight handcuffing does not

constitute excessive force unless it causes some injury beyond temporary discomfort." *Lynch*,

567 F. Supp. 2d at 468–69 (collecting cases). Because there is no evidence that the handcuffing

injured White, or that police officers ignored White's request to loosen his handcuffs, the

handcuffing at issue here does not constitute excessive force. Accordingly, White's New York law assault and battery claims fail.[7]

### b. Liability of Esposito Realty

As stated earlier, an assault claim requires a plaintiff to show that the defendant intentionally places the plaintiff in fear of imminent harmful or offensive contact. *United Nat'l Ins. Co.*, 994 F.2d at 108. And a battery claim arises from an intentional wrongful physical contact with another person without consent. *Id.*

There is no evidence in the record showing that Esposito made any physical contact with White or placed him under fear of imminent harmful or offensive contact. Tellingly, White admitted in his deposition that he never felt threatened by Esposito. (Dkt. No. 30-3 at 95:25–96:1.) Accordingly, White's assault and battery claims against Esposito Realty must be dismissed as a matter of law.

### 4. Negligence

White next asserts general negligence claims against the City and Esposito Realty. However, New York law does not allow a plaintiff to assert a general negligence claim arising out of an allegedly false arrest or malicious prosecution. *See Watson v. United States*, 865 F.3d 123, 134 (2d Cir. 2017); *Croft v. Greenhope Servs. for Women, Inc.*, No. 13 Civ. 2996, 2013 WL 6642677, at *7 (S.D.N.Y. Dec. 17, 2013) (dismissing plaintiff's negligence claim arising from an

---

[7] Instead of adducing evidence, White relies on two cases, *Hayes v. N.Y.C. Police Department* and *Graham v. City of New York*, which are inapposite. (Dkt. No. 36 at 15 (citing *Hayes v. N.Y.C. Police Dep't*, 212 F. App'x 60 (2d Cir. 2007); *Graham v. City of New York*, 928 F. Supp. 2d 610 (E.D.N.Y. 2013)).) Specifically, the police officers used "a gun and nightstick" to hit the plaintiff in *Hayes*, which is clearly different from the mere handcuffing in this case. *Hayes*, 212 F. App'x at 62. And the plaintiff in *Graham* told the police officers that handcuffing "caused him immense pain" but the police officers were unresponsive, *Graham*, 928 F. Supp. 2d at 621. Here, in contrast, White never complained about the handcuffing throughout his arrest and cannot argue that the police officers ignored his pleas to loosen the handcuffs.

alleged false arrest and detention) (citing *Ferguson v. Dollar Rent A Car, Inc.*, 959 N.Y.S.2d 55, 56 (App. Div. 1st Dep't 2013)).  Accordingly, White's negligence claims must be dismissed.

### 5.        Negligent hiring, training, supervision or retention

White claims that the City and Esposito Realty were negligent in the "hiring, monitoring and retention of" their employees.  (Compl. ¶ 130.)

Under New York law, a claim for negligent hiring, training, supervision or retention requires a plaintiff to show

> (1) that the tort-feasor and the defendant were in an employee-employer relationship, (2) that the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence, and (3) that the tort was committed on the employer's premises or with the employer's chattels,

in addition to the standard elements of negligence.  *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004) (internal citations and quotation marks omitted).

In addition to the fact that White has failed to establish negligence in this case, White has not submitted any evidence to show that the City or Esposito Realty "knew or should have known" of their employees' propensity for the conduct in this case.  *Id.*  Summary judgment is appropriate where there is no proof that the employers—the City and Esposito Realty—were ever on notice of their employees' alleged propensity to commit the alleged torts.  *Tsesarskaya v. City of New York*, 843 F. Supp. 2d 446, 464 (S.D.N.Y. Feb. 14, 2012) (granting summary judgment when plaintiff adduced no evidence that employers acted negligently).

### 6.        Intentional Infliction of Emotional Distress

White asserts a claim of intentional infliction of emotional distress against the City and Esposito Realty.  (Compl. ¶ 146.)

To prevail on an intentional infliction of emotional distress claim, a plaintiff must show "(1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999). The conduct giving rise to such liability must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, [so as] to be regarded as atrocious, and utterly intolerable in a civilized community." *DiRuzza v. Lanza*, 685 F. App'x 34, 37 (2d Cir. 2017) (alteration in original) (citation omitted).

Here, no reasonable factfinder could conclude that the conduct of Esposito or the police officers was so outrageous as to satisfy the "exceedingly high legal standard" to state an intentional infliction of emotional distress claim. *Chanko v. Am. Broad. Cos. Inc.*, 27 N.Y.3d 46, 57 (2016). The undisputed evidence shows that Esposito was performing his duty as a manager of the Building when he questioned White about his unauthorized presence in a private apartment residence. Esposito's subsequent 911 call was also reasonable in light of his impression that a burglary had occurred in the Building. Additionally, given that the Court has concluded that probable cause existed for the arrest and prosecution, the police officers' conduct was also well within the bounds of human decency. White has adduced no evidence suggesting otherwise. Accordingly, the Court grants summary judgment to the City and Esposito Realty on the claims of intentional infliction of emotional distress.

### 7.    Defamation

White asserts defamation claims against the City and Esposito Realty. (Compl. ¶ 104.) To plead a defamation claim, one element White must allege is that a specific statement made by the City or Esposito Realty is "defamatory." *Boyd v. Nationwide Mut. Ins. Co.*, 208 F.3d 406, 409 (2d Cir. 2000). However, other than a briefly reference to being "subjected to . . .

defamation of character" in his complaint, White has not set forth any particular statements that would give rise to a defamation claim. (Compl. ¶ 104.) Nor does he adduce any evidence that would support a defamation claim. Accordingly, the Court dismisses his defamation claims against the City and Esposito Realty.

### 8. Conspiracy

Finally, White asserts conspiracy claims under New York law. (Compl. ¶ 114.) New York does not recognize an independent conspiracy claim. *See Black Radio Network, Inc. v. NYNEX Corp.*, 44 F. Supp. 2d 565, 583 (S.D.N.Y. 1999) ("In New York, civil conspiracy is a derivative claim; New York does not recognize an independent tort of civil conspiracy."); *Wall St. Transcript Corp. v. Ziff Commc'n Co.*, 638 N.Y.S.2d 640, 641 (App. Div. 1st Dep't 1996). Therefore, White must establish a viable underlying tort claim before pleading a conspiracy claim under New York law. *Black Radio Network*, 44 F. Supp. 2d at 583. As discussed earlier, all of White's New York law tort claims fail. Therefore, his conspiracy claims necessarily fail.

## IV. Conclusion

For the foregoing reasons, Defendants' motions for summary judgment are GRANTED. Because the complaint is dismissed in its entirety, the cross-claims between the City and Esposito Realty are dismissed as moot.

The Clerk of Court is directed to close the motions at Docket Numbers 25 and 29, and to close this case.

SO ORDERED.

Dated: March 29, 2019
New York, New York

J. PAUL OETKEN
United States District Judge